311-0065 Citizens Equity First Credit Union Athlete by James Morrison v. C. Louis Hofmann, appellant by Brian Peterson Brian Peterson, Defendant E. Lee Hofmann Brian Peterson, Defendant E. Lee Hofmann, Appellant by Brian Okay. You're suggesting, if I understand you correctly, that any time a lender operating under a written agreement cuts the debtor a break and says, okay, I'm looking at your circumstances and I'm going to give you an opportunity to pay less for a period of time, that that constitutes an oral agreement that changes the underlying document? I think so, Your Honor. At least that's what our 2619 motion says, is yes. If an agreement was entered into, I mean, under the circumstances you just said, and the creditor gives the debtor a break, the creditor could turn around the next day and amend those terms, adjust those terms, do whatever it wants to the terms of that oral agreement, and the debtor would have no defenses. Right, because the original written agreement is still in effect by its very terms. I would agree if the parties to the transaction would agree that all the remainder of the terms in the original loan documents apply, but we don't have that here. We don't know the extent of the obligations, and that's a big question of fact, which is why we feel that summary judgment was improper in the Second Amendment complaint. At the deposition of Mr. Schweigel, I asked Mr. Schweigel, I said, were the payment terms of the promissory note the only terms modified? And his response was, I don't recall the entirety of the situation. And I think that shows a lot because this isn't the normal circumstance where we have a clear modification of one term and the remainder of the note applies. Indeed, in the three complaints that have been filed, there is not one allegation that the remainder of the terms of the promissory note apply. At no time in three years has a plaintiff made that allegation. And I think that creates a big question of fact, which precludes summary judgment, or in the alternative, which would require the plaintiff to replete because we still don't know what other terms besides the payment terms were modified. And without that, we don't know the terms of oral loan agreements. What difference does it make what was modified? The language in the written agreement says that they can make modifications. It does, Your Honor, but it doesn't say those modifications can violate the statute of frauds. Here we clearly have an oral modification for repayment period in excess of a year with no writing. And that writing is required under the terms of loan documents. And that, going back to our statute of frauds argument, parties are allowed to modify contracts. But I am aware of no law and the plaintiff has not cited any law saying that they're allowed to enter into an oral modification, which would be unenforceable under the statute of frauds. And our statute of frauds argument does not say that these modifications didn't exist or that they're invalid. The statute of frauds doesn't invalidate the oral agreements. It renders them unenforceable. So, as I just stated, that's the essence of our 619 motion on the statute of frauds is that here we have an agreement. We have an underlying loan agreement that was orally modified, that's allegedly been orally modified. The terms of those oral modifications are clearly in excess of a year and, in fact, span the entire length of the loan. But we have no writing saying the terms. We have no writing which says these are the payment obligations. This is what's required to have been made. And for three years we've been trying to get the plaintiff to tell us the exact terms, and we have nothing. We have no more than we did when the original complaint was filed. Not a single new fact has been given. All that's been done in the second amended complaint is the plaintiff has rearranged those allegations. So, I guess- But does it really matter what's in the underlying, the promissory note? Isn't the agreement that concerns Mr. Hoffman the guarantee? In part, Your Honor, yes, because the guarantee is security for the promissory note. However, in Illinois, a guarantor cannot be held liable for more than the underlying debtor. And that's really the essence is, is the underlying debtor liable here? Does the statute of frauds apply to bar enforcement against the underlying debtor? If it does, the plaintiff can't hold the guarantor liable for that debt. It's unenforceable. If another defense we've asserted would apply, which would render the underlying debt unenforceable or invalid, then the plaintiff cannot then say, well, Mr. Hoffman's guarantor, you have to pay us. Because he can't be held liable for more than the principal debtor. Counsel, you have two minutes. Thank you. For more than the principal debtor or for more than the principal debtor? For more than the principal debtor. The guarantor's liability cannot exceed that of the principal debtor. So if the principal debtor is not liable to the plaintiff, then the guarantor is absolved from liability as well. So it is the principal debtor. That's correct. Not the debtor. Yes. Okay. Excuse me, Your Honor. I'm sorry. I may have misunderstood you right there. If the principal debtor in this case was Gaines Management, they are the party that executed the promissory note. If they are not liable on the promissory note to the plaintiff, then neither is the guarantor. The guarantor cannot be forced to pay more than the underlying debtor, which would be Gaines Management. I'm sorry. I didn't know if there was going to be a follow-up question. I guess I know I'm very short on time, but I would like to stress how we feel the trial court erred in denying our motion to dismiss the Second Amendment complaint pursuant to Section 2615. The Second Amendment complaint for the first time no longer alleged oral modifications but alleged oral agreements, temporary waivers, and here's the kicker, or some combination thereof. However, it did not identify or explain which allegations constituted those oral agreements, which allegations constituted those temporary waivers, or which allegations constituted some portion thereof or some combination thereof. And I think this is important because under Illinois law, different standards apply to temporary waivers when they do oral agreements. In Illinois, a party cannot unilaterally revoke an oral agreement in ex parte fashion. And that's why it's so important that the plaintiff be forced to plead and identify which allegations are which. And it's something the plaintiff has never done. It's something the trial court did not require the plaintiff to do. And it's something I would invite you to challenge the plaintiff on. Which allegations in that Second Amendment complaint are you alleging are oral agreements? And which are you alleging temporary waivers? I'll second. Thank you. Thank you, Mr. Peterson. And Mr. Morrison? Mr. Morrison. My name is James Morrison. I represent the credit union in this case. The case is fairly simple. We loaned them a large amount of money. They didn't pay it back. The guarantee, Mr. Hoffman's sign says, that he waives all defenses of guarantors, whether they're actable or legal, waives all defenses of the borrower, the debtor. We just talked about any and all defenses. It's fairly comprehensive language, which I'll give you in a moment here. Except I left it on the table. Excuse me. Well, we have read the briefs. These are the briefs. We're here on the amendment to the amending complaint. There was an original complaint, which the counsel talked about. The court dismissed that for failure to separate the difference of guarantors and separate counts, which we did in the amended complaint. Then after we attempted a summary judgment, the court denied the summary judgment basically because of the way the pleadings were framed. It said if the pleadings had been framed as a suit on the underlying note, on the guarantee in the underlying note, he would have fought a flat slam dunk and could have made a summary judgment at that point. So we amended the complaint to state a new cause of action against Mr. Hoffman in the amendment. And that's the case we're on here now. When an amendment's been filed, it supersedes prior pleadings. Those prior pleadings don't make any difference anymore. The question is whether we're entitled to summary judgment on the amendment, count two, which is the count directed against Mr. Hoffman. And as I say, it's a simple case. We loaned them a large amount of money. They didn't pay it back. And the guarantee that he signed says he waived his defenses. And it says any and all defenses of whatever nature. I mean, it's as broad as you could say it, unless you wanted to undermine it and put it in highlight or something. It's as broad as you can make it. And those types of waivers are enforceable in Illinois. In our brief, we cite the Bank of America case on this particular point. And it's a long case with several different points raised in it. The page is 4-1, the last third. And the page is like 171 through 174. It's just a discussion on these particular points, not even a long discussion. We had a situation in that case where the party raised affirmative defenses, including that there had been oral discussions about modifying the loan, fraud, and a stop. It's just very similar to what they're trying to raise here. Those were the affirmative defenses raised there. The trial court struck those affirmative defenses, and that was affirmed on appeal. And the reasons, two reasons given in that opinion for why those defenses were stricken. Number one, the court says we enforce that type of waiver where they say they're going to waive all defenses. So they enforced it. And number two, they said because those are oral agreements you're talking about, they're unenforceable anyway because of the Illinois Credit Agreements Act. So if you take a quick look at that opinion in those pages, and there's another opinion cited in there that's also on point, the teacher's insurance case, that reached the same result for the same reasons. Number one, because there was this provision in the guarantee in the documents there, like there is in our guarantee, that says we waive all defenses. And number two, because what they're talking about is oral discussions about extending more lenient terms on the note. And that's unenforceable under the Credit Agreements Act. The Credit Agreements Act is very specific. It says the debtor may not make a claim based on modifications to the credit agreement unless turned right. It says the debtor may not raise in a counterclaim or defense the various matters, including oral modifications. So it's the debtor under that act, unless somebody wants to construe the word debtor to mean creditor, the debtor is the one that's precluded under that act. What we have here is somebody noted in one of their questions that we gave them a break. We allowed them for a period of time to make smaller payments. I think it was a mistake to ever characterize that as a contract modification or an agreement. When we plead cases no longer we're supposed to plead facts and not conclusions, I respectfully suggest that pleading that it's a modification, which we did, is pleading inclusion. It's just irrelevant to our discussion here. What's relevant is what the parties said back and forth to each other at the time, whether that made an agreement. And nobody's saying it did. But what I think that is, when you give a party a break on the note, is a waiver. In the Lange case, the Illinois Supreme Court says that you, and they gave an example of what a waiver consists of, is just letting somebody slide, letting them get by with short payments or late payments for a time. And they said they characterized that as a waiver. And that same decision says that when that happens, you can't just sue them the next time they make a late payment. You have to give them notice that you're going to strictly enforce the agreement in the future. And we did that. We gave them a letter in February of 2008 that said that, addressed to all three guarantors, who are also the managers of the debtor corporation, so they're the same people. But they all got the letter. And then we didn't sue them until June. We had some further discussions with them, where we offered, in a written proposal that didn't get accepted, offered them to defer some payments until the end of the loan. I think 10 monthly payments from July through April of 2008. And they never took us up on that. They didn't make the May payment, which they were required to do. They didn't make the June payment, which they were required to do. And we filed suit. That's what happened here. And to me, on reflection, those are waivers. And the Supreme Court says you can withdraw those, which we did. What really controls here is the language of the guarantee. And the guarantee, I think, is very explicit on waiver of these defenses. It's also very explicit on this absolute and unconditional guarantee. It's also very explicit on many other points, including our right to modify the loan from time to time, as many times as we want, to give them extra time to do this, do that, or other things, without notice to anybody. Say, even if this were a case where the guarantor was a different person than the debtor, we wouldn't even have to notify them. As a matter of fact, he was the same person we were talking to at the time. So looking at the pleading we have before the court at this time, the amendment, and not the prior amendment, looking at the guarantee of the controls, there's no question those reports should be affirmed on granting a summary judgment. On statute of frauds on the merits, we're suing on the guarantee. It's in writing, signed by the guarantor. The underlying loan document, the note, is in writing, and it's signed by the debtor. That's all the statute of frauds requires, and it's there. I believe that's all the argument I have. I'll ask the court to have any questions. Any questions? I guess not. Thank you, Mr. Moore. Sure. I'll probably find a piece of paper to put forward. And Mr. Peterson, any rebuttal? Yes, Your Honor. I'd like to address several of the points made by Mr. Morrison in his argument. First, this case is not and never has been about an underlying guarantee. We're not disputing that the defendant, Hoffman, executed the guarantee. That's not at issue. What's at issue is these repeated allegations of oral modifications. Now, they're called oral agreements. That's what's at issue. What are the terms of those oral agreements? Second, to respond to his argument that the guarantee, to respond to Mr. Morrison's argument that the guarantee is a controlling language, I don't even think we get to that language in the guarantee because the plaintiff is not satisfied with conditions precedent, which would invoke the obligations of the guarantee. The guarantee executed by Mr. Hoffman only guarantees the indebtedness of games management. That's it. The guarantee doesn't say if games management does not have an indebtedness, you still have to pay us. So the conditions precedent that must be satisfied are, one, the plaintiff has to prove a default. Two, the plaintiff has to prove an indebtedness. And three, the plaintiff has to prove that that indebtedness is enforceable. So without— Has the loan been repaid? Pardon me? Has the loan been repaid? The loan has not been repaid, no. So without proving the indebtedness and that that indebtedness is enforceable against the principal debtor, I don't even think we get to the language in the guarantee, which may waive defenses. So that would be our response to that argument. Secondly, Mr. Morrison stated that the prior pleas are irrelevant and that we're only here on the Second Amendment complaint. With all due respect to Mr. Morrison, I think he's incorrect. We are here on the original complaint, the First Amendment complaint, and the Second Amendment complaint. We move to dismiss— We're really just here on the Second Amendment complaint, I understand. We're arguing that the original complaint should have been dismissed with prejudice as well and the First Amendment complaint. But that's moved once they file the Second Amendment complaint, isn't it? I don't believe it is. I don't think that's what Illinois law states. I think that we can still argue that the trial court erred in dismissing those complaints. And allowing for amendment. Yes, that's our argument on this. We still have the ability to argue to the court that that first and second complaint should have been dismissed with prejudice. Had that been dismissed with prejudice, that would have operated as res judicata to any pleading on that same set of facts, which would have barred the filing of the Second Amendment complaint. Yes. Next, in response to the argument on the Illinois Credits Agreement Act, we stated this to the trial court that there was going to come a time when the plaintiff was going to use that Illinois Credits Agreement Act as its full body of armor. It's going to use it as a sword saying we're going to sue you under this oral loan agreement, under this oral modification, under any terms we want to. It's going to use it as a shield saying although we're suing you under any terms we want to and the terms that we think we're entered into, you can't do a darn thing about it. And that's exactly what's happening. That's exactly what played out. The plaintiff has sued us. We tried to get them to explain the terms of those oral agreements. We tried to get them to clarify and set forth with particularity what transpired. And the response is we don't have to give you that information because of the Illinois Credits Agreement Act. And that goes back to our argument that the mutuality of obligation should apply. And lastly, Your Honor, Your Honors, Mr. Morrison has said that he thinks this case is just about temporary waivers. But I don't think the court can disregard allegations of oral agreements. If this – if it was a case about temporary waivers, then oral agreements should not have been pled. But they have been pled. And I don't think we can just ignore those. I think questions – oral agreements in a – under Illinois law are questions of fact. And I think that by pleading oral agreements and by including allegations, which appear that oral agreements were entered into, indeed, the plaintiff's affidavit, which was used in support of its motion for summary judgment, was the same one used on its first motion for summary judgment. That affidavit of Mr. Schweiger still testifies to oral modifications and still testifies that that May 2008 default was included in those oral modifications. So I don't think we can transform this into just a case of temporary waivers because the plaintiff now wants to and it would benefit their case. I think the court has to consider the oral agreements. That is all, Your Honor. Your Honors, therefore, we would like to ask that this court overturn the trial court on all grounds mentioned in the brief. Thank you. All right. And thank you, Mr. Peterson. And thank you both for your argument today. We will take this matter under advisement.